**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JEAN HOLMAN ON BEHALF OF H.P., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-2600 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 14, 16 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**Denying Plaintiff's Motion for Summary Judgment; Denying Defendant's Cross Motion for Summary Judgment; Remanding Case to Hearing Officer**

**I.  INTRODUCTION**

In this case, Plaintiff Jean Holman, on behalf of her son H.P., challenges an administrative decision that rejected her claim that the District of Columbia Public Schools ("DCPS") denied H.P. a free appropriate public education under the Individuals with Disabilities Education Act.  Plaintiff argues that the individualized education program ("IEP") developed by DCPS for H.P. in July of 2018 did not adequately address and plan for his special needs and that DCPS failed to offer a school placement appropriate for H.P.  After considering Plaintiff's challenge, an impartial hearing officer determined that the July 2018 IEP provided H.P. with a free appropriate public education and that the school placement offered by DCPS could meet the goals outlined in the IEP.  Through this lawsuit, Plaintiff claims that the hearing officer erred by not applying the doctrine of collateral estoppel and by reaching a conclusion contrary to the evidence with respect to the substance of the July 2018 IEP.  The parties have moved for summary judgment based on the administrative record.  Because the Court finds that the impartial hearing officer incorrectly applied the burden of persuasion and failed to address

Plaintiff's primary arguments, and for the reasons set forth below, the Court denies the parties' motions for summary judgment and remands the case to the impartial hearing officer for further proceedings.

## II.  BACKGROUND

### A.  The Individuals with Disabilities Education Act

The Individuals with Disabilities Education Act ("IDEA"), codified at 20 U.S.C. §§ 1400–1482, is designed to "ensure that every child has a meaningful opportunity to benefit from public education."  *Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015). The statute provides that every child with a disability in this country is entitled to a free appropriate public education, or FAPE, that must be tailored to "emphasize[] special education and related services designed to meet [the student's] unique needs."  20 U.S.C. § 1400(d)(1)(A).

An IEP is the "primary vehicle" for implementing the FAPE entitlement under the IDEA. *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 830 (D.C. Cir. 2006) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).  An IEP is a written document that outlines the student's present academic achievement, the student's disability, academic and functional goals for the student, and special education and related services to be provided to the student, among other requirements detailed by federal regulations.  *See* 34 C.F.R. § 300.320; *see also Lesesne*, 447 F.3d at 830 (stating that an IEP "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." (quoting *Honig*, 484 U.S. at 311)).  An IEP should be tailored to "the unique circumstances of the child for whom it was created."  *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017).

Generally, IEPs are developed collaboratively with a team that includes school administrators, educators, parents, and often others, such as medical professionals, to assist in designing the most effective program for the student. *See* 34 C.F.R. § 300.321. The team, however, does not always agree on the contents of an IEP or the proposed plan forward. A parent or guardian who believes that an IEP as drafted does not provide the student with a FAPE has a "right to seek review of any decisions [he or she] think[s] inappropriate." *District of Columbia v. Doe*, 611 F.3d 888, 890 (D.C. Cir. 2010) (citation omitted). Review of an IEP begins with the filing of an administrative due process complaint and is followed by a due process hearing conducted by an impartial hearing officer. 20 U.S.C. § 1415(f). Administrative decisions of an impartial hearing officer, referred to as hearing officer determinations ("HOD"), can then be appealed through judicial proceedings in a U.S. District Court. *See id.* § 1415(i)(2)(A).

## B.  Factual Background

At the time Plaintiff filed the Complaint, H.P. was a nine-year-old student who resided in the District of Columbia. *See* Compl. at 2, ECF No. 1.[1] DCPS has determined that H.P. is eligible for special education and related services because of his disability classification of Autism Spectrum Disorder. A.R. 4. As alleged in the Complaint, H.P. "has no cognitive deficits and is on or above grade level" but has language deficits in pragmatic language and "has extreme difficulty with transitions and change in his routine." Compl. at 3. As of the date of the Complaint, H.P.'s education had been the subject of four due process complaints. *See id.* In every case, including this one, H.P.'s parents have unilaterally placed him at the Auburn School,

---

[1] The paragraphs in Plaintiff's Complaint are not labeled sequentially throughout the whole document, so the Court cites to page numbers instead.

a private school in Maryland that specializes in educating students with high functioning autism. *See id.* at 2–3.  The current challenge centers on two of H.P.'s recent IEPs from January 2017 and July 2018.

The January 2017 IEP purported to summarize H.P.'s present levels of academic achievement at the Auburn School, appropriate goals for the coming year, and the special education and related services that would allow H.P. to meet those goals.  *See* A.R. 82–101.  Of particular note, the January 2017 IEP called for occupational therapy, behavioral support services, and speech-language pathology to be provided outside the general education setting. *See* A.R. 98–99.  Plaintiff challenged the January 2017 IEP in an administrative due process hearing.  *See* A.R. 210–34.  She argued that the IEP (1) failed to account for prior administrative decisions, (2) provided inappropriate services based on outdated data, (3) failed to sufficiently explain the appropriate educational placement, (4) failed to provide a one-on-one Applied Behavior Analysis shadow, (5) did not adequately involve the parent or others with knowledge about H.P.'s characteristics, and (6) could not be implemented in H.P.'s current educational program.  A.R. 212.  She also argued that the placement offered by DCPS at a public school within a Communication and Education Support ("CES") Program was inappropriate and denied H.P. a FAPE.  A.R. 212.

After the due process hearing, the hearing officer, named Keith L. Seat, issued a decision that made findings of fact and conclusions of law (the "February 2018 HOD").  A.R. 213–232. Hearing Officer Seat reached several conclusions relevant to the current case.  First, Plaintiff had argued that collateral estoppel should apply to issues that had been resolved in past due process hearings.  A.R. 226.  Hearing Officer Seat determined that "[i]t is not within the jurisdiction of Hearing Officers as a regular matter to enforce prior decisions that have been rendered" and that

collateral estoppel did not apply.  A.R. 226.  Second, with respect to speech-language service,

Hearing Officer Seat stated that DCPS relied on outdated data when prescribing those services

and that "DCPS should simply have conducted a speech-language evaluation of Student to obtain

accurate data from which to make reasonable decisions."  A.R. 226.  Third, with respect to

occupational therapy, Hearing Officer Seat again found that DCPS relied on old data and that a

new evaluation should have been completed.  A.R. 226–27.  Fourth, with respect to behavioral

support services, Hearing Officer Seat found that the baseline behaviors and goals did not

account for the information provided by the parent and teachers from the Auburn school and

were "wildly inappropriate" in light of the findings of fact based on that testimony.  A.R. 227.

Finally, Hearing Officer Seat stated that:

> [I]t is worth noting that with Student's great difficulty in transitions, the 1/29/16
> IEP had specified that related services should be provided in Student's classroom
> to the extent possible.  Yet in the 1/30/17 meeting DCPS appeared entirely
> unconcerned by the perspectives and views of those who actually know and work
> with Student.

A.R. 227.  Hearing Officer Seat concluded that the noted deficiencies resulted in "misallocating

and misdirecting Student's services and thus [we]re a denial of FAPE."  A.R. 227.  The hearing

officer awarded tuition costs so that H.P. could attend the Auburn School for the 2017-2018

school year, but declined—in response to Plaintiff's request to require certain services or

information in the IEP—to "prescribe the specific IEP details that may be needed to provide

FAPE for Student many months in the future in very likely changed circumstances."  A.R. 233.

    In July of 2018, H.P.'s IEP team reconvened.  *See* A.R. 454.  The team relied on updated

evaluations when discussing H.P.'s current achievement levels and proposed goals for

academics, speech-language pathology, behavior support, and occupational therapy.  *See* A.R.

463 (describing speech-language evaluation data from April 19, 2018); A.R. 465 (describing

"comprehensive psychological evaluation by Tina S. Nguyen" conducted on April 30, 2018);

A.R. 468 (describing occupational therapy assessment conducted on March 14, 2018). The July

2018 IEP called for specialized instruction for 30.5 hours per week, occupational therapy for 120

minutes per month, behavioral support services for 120 minutes per month, and speech-language

pathology for 240 minutes per month, all to occur outside a general education setting. A.R. 471.

The July 2018 IEP concluded that the least restrictive environment for H.P. would be a separate

school where he would be outside a general education classroom one hundred percent of the

time. A.R. 472.

Plaintiff challenged the July 2018 IEP at a due process hearing that took place across four

days in March and May of 2019. A.R. 4. Plaintiff put forth two broad attacks on the substance

of the July 2018 IEP. First, Plaintiff argued that the IEP team should have developed an IEP

consistent with the findings of fact and conclusions of law in Hearing Officer Seat's decision

about the January 2017 IEP. A.R. 7 n.4. Second, Plaintiff argued that the July 2018 IEP was

substantively inappropriate for a variety of reasons notwithstanding the previous decision. A.R.

7 n.4. Specifically, Plaintiff claimed that the July 2018 IEP should have limited transitions for

H.P. and provided "any and all related services inside the classroom." A.R. 7 n.4. She claimed

that the July 2018 IEP failed to sufficiently describe the type of classroom appropriate for H.P.,

which should include "classmates able to communicate and that were good language models" for

him. A.R. 7 n.4. Plaintiff also claimed that H.P. should be provided more than 120 minutes per

month of occupational therapy services. A.R. 7 n.4. In addition to these issues, the

administrative due process hearing considered whether DCPS and the District of Columbia

Office of the State Superintendent of Education ("OSSE")[2] failed to offer H.P. an appropriate

_____

[2] OSSE is H.P.'s state education agency that assisted with finding an appropriate school
placement for H.P. A.R. 4.

IEP prior to the beginning of the 2018–2019 school year and whether DCPS and OSSE failed to offer H.P. a FAPE by proposing an inappropriate school placement.  A.R. 7.

The hearing officer, Coles B. Ruff, heard testimony from thirteen witnesses, many of whom testified as experts.  A.R. 8 n.7.  The witnesses included educators and administrators from the Auburn School, H.P.'s parent and grandmother (who testified as an expert witness), and DCPS personnel.[3]  Hearing Officer Ruff heard testimony from each professional who evaluated H.P. before his July 2018 IEP.  A.R. 12 (describing the evaluations conducted ahead of the July 2018 IEP meeting).  Based on the testimony and submitted evidence, Hearing Officer Ruff made findings of fact about H.P.'s educational history, H.P.'s previous IEPs, the prior due process hearings,[4] the July 2018 IEP, and the efforts to find an appropriate placement for H.P.  A.R. 9–20.

Hearing Officer Ruff made two primary conclusions of law relevant to the Court's present ruling in the HOD (the "May 2019 HOD").  First, Hearing Officer Ruff determined that collateral estoppel did not apply and that the July 2018 IEP did not deny H.P. a FAPE based on its inconsistencies with Hearing Officer Seat's decision.  A.R. 22–23.  Second, Hearing Officer Ruff concluded that "there was insufficient evidence that [H.P.'s] July 13, 2018, IEP is in anyway deficient . . . and . . . that DCPS sustained the burden of persuasion by a preponderance of the evidence that [H.P.'s] July 13, 2018, IEP was reasonably calculated to enable [H.P.] to make progress appropriate in light of [his] circumstances."  A.R. 24.  Hearing Officer Ruff also determined that Plaintiff was eligible for tuition reimbursement because DCPS failed to provide

---

[3] Also represented at the hearing was OSSE, who presented one witness.  A.R. 8 n.7.

[4] The hearing officer specifically noted the previous conclusions on collateral estoppel and that the January 2017 IEP "had removed a requirement in a prior IEP that all ancillary services be provided in the classroom rather than pull out."  A.R. 11 nn. 9–10.

an appropriate IEP and educational placement before the 2018–2019 school year started.  A.R.
25.  Despite this, he found that the offered position, while delayed, could appropriately
implement the July 2018 IEP.  A.R. 26.

Plaintiff filed the instant lawsuit seeking a reversal of the Hearing Officer Ruff's
decision.  *See* Compl.  In her motion for summary judgment, Plaintiff argues (1) that Hearing
Officer Ruff should have applied collateral estoppel to the issues litigated in the February 2018
HOD, (2) that the July 2018 IEP is substantively deficient, and (3) that DCPS failed to offer an
appropriate educational placement for H.P.  *See generally* Pl.'s Mem. Supp. Mot. Summ. J.
("Pl.'s Mem."), ECF No. 14-1.  In its cross motion for summary judgment, Defendant District of
Columbia (the "District") argues that collateral estoppel should not apply, that the Hearing
Officer Ruff correctly determined that the July 2018 IEP provided H.P. with a FAPE, and that
the offered educational placement could successfully implement the July 2018 IEP.  *See
generally* Def.'s Cross Mot. Summ. J. ("Def.'s Mot."), ECF No. 16.

### III.  LEGAL STANDARD

"Although motions for review of an HOD are called motions for summary judgment, the
court does not follow 'a true summary judgment procedure.'"  *Middleton v. District of Columbia*,
312 F. Supp. 3d 113, 128 (D.D.C. 2018) (quoting *L.R.L. ex rel. Lomax v. District of Columbia,*
896 F. Supp. 2d 69, 73 (D.D.C. 2012)).  Instead, a motion for summary judgment in an IDEA
administrative review case "operates as a motion for judgment based on the evidence comprising
the record and any additional evidence the Court may receive."  *D.R. ex rel. Robinson v. District
of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009).  Where, as here, "no new evidence has been
submitted . . . , the Court will treat the parties' cross-motions for summary judgment as motions
for judgment based on the administrative record."  *Collette v. District of Columbia*, No. 18-CV-

1104, 2019 WL 3502927, at *6 (D.D.C. Aug. 1, 2019) (omission in original) (quoting *G.G. ex rel. Gersten v. District of Columbia*, 924 F. Supp. 2d 69, 73 (D.D.C. 2012)).  This procedure is essentially "a bench trial based on a stipulated record." *N.W. v. District of Columbia*, 253 F. Supp. 3d 5, 12 (D.D.C. 2017) (quoting *Lomax*, 896 F. Supp. 2d at 73).

A court reviewing an administrative IDEA determination "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C); *see also* 34 C.F.R. § 300.516(c).  It is the responsibility of the courts to give "due weight" to the administrative findings and refrain from "substitut[ing] their own notions of sound educational policy for those of the school authorities which they review."  *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982).  However, the D.C. Circuit has held that "less deference than is conventional in administrative proceedings" is the correct standard of review.  *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (internal quotations omitted) (citation omitted).  And a hearing decision lacking "reasoned and specific findings deserves little deference."  *Kerkam ex rel. Kerkam v. Superintendent, D.C. Pub. Sch.*, 931 F.2d 84, 87 (D.C. Cir. 1991) (quotations omitted) (citation omitted).  A court may remand a hearing officer's determination if it requires further development or clarification.  *See McNeil v. District of Columbia*, 217 F. Supp. 3d 107, 115–16 (D.D.C. 2016) (remanding where decision did not address expert opinion or psychological evaluation); *Options Pub. Charter Sch. v. Howe ex rel. A.H.*, 512 F. Supp. 2d 55, 57–58 (D.D.C. 2007) (remanding case where hearing officer made "no findings with respect to the basis upon which she credited . . . testimony" and "[e]lsewhere . . . relie[d] on speculation").

## IV.  ANALYSIS

Plaintiff puts forth three main arguments for reversing the Hearing Officer Ruff's decision.  First, Plaintiff argues that the doctrine of collateral estoppel should have been applied to the issues previously litigated before Hearing Officer Seat regarding the January 2017 IEP. Pl.'s Mem. at 1–17.  Second, Plaintiff argues that even if the previous decision is ignored, the July 2018 IEP fails to provide H.P. with a FAPE.  *Id.* at 17–38.  Finally, Plaintiff contends that DCPS failed to prove that the educational placement offered to H.P. was appropriate.  *Id.* at 38–45.  The District maintains that Plaintiff's arguments are without merit and that Hearing Officer Ruff's decision should be upheld.  The Court considers each argument in turn.

### A.  Collateral Estoppel

Under the doctrine of collateral estoppel, or issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). A prior decision has preclusive effect if three conditions are met: (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in that prior case," (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case," and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination."  *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1991).  "In issue preclusion, it is the prior *judgment* that matters, not the court's opinion explicating the judgment."  *Id.*  Determination of the issue must be necessary for the judgment rendered for collateral estoppel to apply.  *See id.*

Plaintiff argues that collateral estoppel applies to all the challenged issues, which includes the speech-language services, behavior support services, and the appropriate classroom placement for H.P.  Pl.'s Mem. at 3–17.  To start, Plaintiff cites a number of cases that apply the doctrine of collateral estoppel to administrative decisions under the IDEA.  *See id.* at 2–3 (collecting cases).  Then, quoting extensively from the February 2018 HOD and the May 2019 HOD, Plaintiff argues that the "issues raised were from the same nucleus of facts and focused on the same allegations about the student's IEPs (despite being IEPs developed in different years)." *Id.* at 3; *see also id.* at 4–7.  She argues that despite the new evaluations considered for the July 2018 IEP, the results "were consistent with the previous data about H.P." and "[n]othing new was learned or available to the team that justified ignoring the decision and findings made [in the February 2018 HOD] about what H.P. needed."  *Id.* at 8.  Plaintiff maintains that the February 2018 HOD should govern with respect to speech-language services, *id.* at 8–12 (arguing that, based on the previous ruling, H.P. should be provided speech-language services only inside the classroom), behavioral support services, *id.* at 12–13 (arguing that, based on the previous ruling, H.P. should receive behavioral support services only inside the classroom), and the type of classroom appropriate for H.P., *id.* at 13–15 (arguing that, based on the previous decision, H.P.'s IEP should specify that he should be placed with classmates who can serve as good language models and who are not nonverbal or below H.P.'s functioning level).  The District argues that collateral estoppel is inapplicable because Plaintiff raised different issues in challenging the two separate IEPs, the May 2019 HOD was based on new evidence, and applying collateral estoppel

in this context would undermine the purpose of an IEP and the IDEA. *See* Def.'s Mot. at 15–21.[5]

The Court concludes that collateral estoppel does not apply in this case. First, the Court finds that the February 2018 HOD and the May 2019 HOD, while dealing with related content, did not involve the same issues. For example, the February 2018 HOD evaluated the January 2017 IEP. Hearing Officer Seat found that the speech-language services suggested in that IEP stemmed from outdated information and ignored the great strides H.P. had made in this area. *See* A.R. 226. Hearing Officer Seat stated that "DCPS should simply have conducted a speech-language evaluation of Student to obtain accurate data." A.R. 226. In contrast, the May 2019 HOD evaluated the July 2018 IEP. The July 2018 IEP prescribed speech-language services based on a new evaluation completed in April of 2018. A.R. 463. Similarly, in the February 2018 HOD, Hearing Officer Seat determined that the behavioral support services were not appropriate because they failed to account for the input provided by H.P.'s teachers and family. A.R. 227. Hearing Officer Seat concluded that the "baselines for the goals" for behavioral development were "wildly inappropriate." A.R. 227. In the July 2018 IEP, the baselines and goals for behavioral development were updated. *Compare* A.R. 465–68, *with* A.R. 94–95. Furthermore, DCPS conducted a new psychological evaluation in April of 2018. A.R. 465. At bottom, the IEPs, and consequently the issues considered, in the two HODs were different. *Cf. Sorenson Commc'ns, Inc. v. FCC*, 765 F.3d 37, 46 (D.C. Cir. 2014) (holding that a ruling about a

---

[5] The District also correctly points out that many cases cited by Plaintiff refer to the similar, but distinct, doctrine of *res judicata*. Def.'s Mot. at 12. *Res judicata* bars a subsequent suit when there has been a prior litigation that "(1) involv[ed] the same claims or cause of action, (2) [was] between the same parties or their privies, and (3) [resulted in] a final valid judgment on the merits." *Cooper v. Jackson*, 941 F. Supp. 2d 75, 81 (D.D.C. 2013) (citing *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010)). *Res judicata* does not apply here because the February 2018 HOD and the May 2019 HOD concern different IEPs.

2010 tiered-rate structure for telecommunications services could not preclude ruling on 2013 tiered-rate structure for the same services because circumstances had changed); *Croskey v. U.S. Off. of Special Counsel*, 132 F.3d 1480, at *5–6 (D.C. Cir. 1997) (unpublished table decision) (refusing to apply collateral estoppel to successive Freedom of Information Act request for similar documents because the "materials [we]re sufficiently different to bar issue preclusion").

Second, even if the two HODs did involve the same issues, resolution of those issues was not necessary for the judgment rendered in the February 2018 HOD.  With respect to speech-language services, Plaintiff argues that the February 2018 HOD determined that H.P. was denied a FAPE because the January 2017 IEP called for those services to occur outside the general classroom setting.  *See* Pl.'s Mem. at 8–9.  But the February 2018 HOD instead found that DCPS fell short because it failed to consider up-to-date data.  *See* A.R. 226.  Importantly, in the February 2018 HOD, Hearing Officer Seat did not find that H.P.'s IEP *must* provide for speech-language service within the normal classroom setting or that it denied H.P. a FAPE because it provided for that service outside the classroom.  Likewise, with respect to behavioral support, the February 2018 HOD noted the failure to update the IEP's baselines and goals.  A.R. 227.  The February 2018 HOD explained that, on the whole, "inadequate present levels of performance and erroneous guidelines deprived Student of educational benefit and impeded Student's right to a FAPE by misallocating and misdirecting Student's services."  A.R. 227.  The judgment in the February 2018 HOD stems from DCPS's failure to consider updated data and testimony regarding H.P.'s progress at the Auburn School—the judgment does not necessarily rest on the issue of offering services outside the classroom instead of within the general education setting.

The Court finds that Hearing Officer Seat's discussion of the issue of H.P.'s placement in a classroom with an appropriate peer group does not govern this case either.  While the February

2018 HOD did state that H.P. should be placed in a classroom with "an appropriate peer group" and with "a higher performing group" to act as good language models, the discussion of H.P.'s placement centered around DCPS's proposed placement within a CES program in a public school. *See* A.R. 229–30.  Hearing Officer Seat found that the proposed placement would be inappropriate for H.P. because "in the proposed CES classroom most of the children were nonverbal." A.R. 230.  In the present case, DCPS did not offer placement in a CES classroom with mostly nonverbal children.  In fact, the July 2018 IEP concluded that the least restrictive environment for H.P. would be in a separate, non-public school.  A.R. 472.  The Court would be more inclined to agree with Plaintiff if DCPS had again proposed placing H.P. in a classroom with nonverbal students, but that is not the case.

Finally, applying collateral estoppel in this context would run counter to the purpose of an IEP and the IDEA.  Under the IDEA, "a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew*, 137 S. Ct. at 999.  The statute "contemplates [a] fact-intensive exercise . . . informed not only by the expertise of school officials, but also by the input of the child's parents or guardians." *Id.*  An IEP must be based on current data, 20 U.S.C. § 1414(c)(1), and must be updated at least once every three years, *id.* § 1414(a)(2)(B)(ii), though IEPs are often updated more frequently. Educators and parents should not be locked into specific services or procedures when updated information and a student's progress or regression indicates a new approach should be taken. *Cf. Comm'r v. Sunnen*, 333 U.S. 591, 599 (1948) ("[Collateral estoppel] is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers.").  The February 2018 HOD considered this issue expressly and Hearing Officer Seat stated that he "does not consider it helpful to try to prescribe the specific IEP details

that may be needed to provide FAPE for Student many months in the future in very likely

changed circumstances." A.R. 233. The Court agrees. Accordingly, the Court finds that the

May 2019 HOD appropriately rejected Plaintiff's efforts to invoke the doctrine of collateral

estoppel.[6]

## B. Appropriateness of July 2018 IEP

Plaintiff argues that DCPS fell short of showing that the July 2018 IEP provided H.P.

with a FAPE. In an administrative due process hearing brought pursuant to the IDEA, the party

who filed for the hearing bears the burden of production and the burden of persuasion. *See* D.C.

Code § 38-2571.03(6)(A). Where there is a dispute about the appropriateness of the child's IEP,

however, the burden of persuasion shifts to the public agency—here DCPS—after the party

requesting the hearing establishes a *prima facie* case. *Id.* § 38-2571.03(6)(A)(i). "The burden of

persuasion shall be met by a preponderance of the evidence." *Id.* While not explicitly stated in

the May 2019 HOD, Hearing Officer Ruff apparently found, by implication, that Plaintiff had

---

[6] Although Plaintiff does not rely on factual comparisons to other cases, the cases she cites regarding collateral estoppel under the IDEA are legally or factually distinguishable in important ways. *See Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 282–85 (7th Cir. 2007) (applying claim preclusion rather than issue preclusion); *Theodore v. District of Columbia*, 772 F. Supp. 2d 287, 292–94 (D.D.C. 2011) (same); *Turner v. District of Columbia*, 952 F. Supp. 2d 31, 42 (D.D.C. 2013) (same); *Dutkevitch v. Pittston Area Sch. Dist.*, No. 12-CV-994, 2013 WL 3863953, at *3 (M.D. Pa. July 24, 2013) (same); *K.B. v. Pearl River Union Free Sch. Dist.*, No. 10-CV-9170, 2012 WL 234392, at *4–5 (S.D.N.Y. Jan. 13, 2012) (same); *James v. District of Columbia*, 949 F. Supp. 2d 134, 138 (D.D.C. 2013) (applying collateral estoppel to bar successive litigation about the same IEP); *C.L. v. Scarsdale Union Free Sch. Dist.*, 913 F. Supp. 2d 26, 40 (S.D.N.Y. 2012) (applying collateral estoppel and *res judicata* to claims under the Rehabilitation Act). Plaintiff's strongest cases on collateral estoppel concern issues of a different, and more permanent, character than the educational services at issue here. *See Capuano v. Fairfax Cty. Pub. Bd.*, No. 13-CV-00568, 2013 WL 5874605, at *6–9 (E.D. Va. Oct. 29, 2013) (barring reconsideration of the student's disability diagnosis absent new evidence); *M.C.G. v. Hillsborough Cty. Sch. Bd.*, 927 So. 2d 224, 227 (Fla. Dist. Ct. App. 2006) (barring reconsideration of the issue "whether a student in a full-time home education program was entitled to services under the IDEA").

established a *prima facie* case with respect to the appropriateness of the IEP.  A.R. 21

("Respondent, DCPS, sustained the burden of persuasion by a preponderance of the

evidence . . . .").  Accordingly, DCPS bore the burden of showing that the July 2018 IEP was

appropriate for H.P. by a preponderance of the evidence.

Plaintiff puts forth several arguments about why the July 2018 IEP did not provide H.P.

with a FAPE.  Plaintiff argues that the July 2018 IEP should have specifically stated that H.P.

needed "a classroom with good language models and . . . classmates functioning at a similar

level academically and socially."  Pl.'s Mem. at 20–21.  Plaintiff claims that the July 2018 IEP

should have provided for a classroom "with integrated speech and language supports in the area

of pragmatic language."  *Id.* at 22–23.  The July 2018 IEP "should not have contained speech and

language services outside of the classroom setting," according to Plaintiff.  *Id.* at 22.  Plaintiff

also argues that H.P. "should only receive any behavioral support services, if and when needed,

inside the classroom," as opposed to being pulled out of the classroom.  *Id.* at 28.  Central to

Plaintiff's claims is the evidence that H.P. does not handle transitions between tasks or

transitions into and out of the classroom well.  *See id.* at 24 (citing record evidence of difficulties

with transitions).  Finally, Plaintiff claims that DCPS did not prove that the occupational therapy

services offered in the July 2018 IEP were appropriate for H.P. and that he should have been

provided more.  *Id.* at 30–31.  In response, the District points to the new evaluations conducted

ahead of the July 2018 IEP meeting, Def.'s Mot. at 22–23, and to the fact that all participants in

the meeting agreed with the goals outlined in the document, *id.* at 24.  The District argues that

Plaintiff fails to provide any legal precedent to support her argument that the July 2018 IEP

should have included all the specifics Plaintiff argues were necessary.  *Id.*

The Court concludes that remand is appropriate for two reasons.  First, the Court is not convinced that Hearing Officer Ruff correctly applied the burden of persuasion.  Instead of explaining how DCPS met its burden of showing that the July 2018 IEP was appropriate, Hearing Officer Ruff explained why, in his view, there was not enough evidence to show that the July 2018 IEP was inappropriate.  *See* A.R. 24 ("Consequently, the Hearing Officer concludes there is insufficient evidence that the July 13, 2018, IEP is deficient because it does not prescribe that related services be provided in the classroom."); A.R. 24 ("There was insufficient testimony presented to support a finding that these factors related to grade level curriculum and the social communication opportunities described in the IEP are deficient . . . ."); A.R. 24 ("Consequently, the Hearing Officer concludes there was insufficient evidence that Student's July 13, 2018, IEP is in anyway deficient in the ways alleged by Petitioner . . . .").  It was not Plaintiff's burden to persuade Hearing Officer Ruff that the July 2018 IEP was inappropriate.  It was DCPS's burden to show that it was appropriate.  Given Hearing Officer Ruff's brief consideration of the substantive appropriateness of the July 2018 IEP in the conclusions of law section of the HOD— only about one page, *see* A.R. 23–24—the Court is not convinced that he appropriately weighed the evidence for and against the July 2018 IEP in light of the burden.

Second, the May 2019 HOD failed to meaningfully address some of Plaintiff's central arguments.  Hearing Officer Ruff found that the evidence showed that "there was agreement by all members of the [IEP] team as to all the goals and services in the IEP."  A.R. 23.  But Plaintiff's entire case centers on the alleged inappropriateness of pulling H.P. out of class to administer the services outlined in the IEP and H.P.'s difficulty with transitions.  Plaintiff points to testimony in the record from multiple witnesses regarding H.P.'s aversion to transitioning for services outside the regular classroom.  *See* Pl.'s Mem. at 24 (citing record evidence of

difficulties with transitions).  And while the Court does not find that the February 2018 HOD is binding pursuant to issue preclusion, it certainly constitutes important evidence to be considered. *See* A.R. 227 ("[I]t is worth noting that with Student's great difficulty in transitions, the 1/29/16 IEP had specified that related services should be provided in Student's classroom to the extent possible.").  Hearing Officer Ruff did not discuss H.P.'s difficulties with transitions at all.

Moreover, Hearing Officer Ruff gave only passing consideration to Plaintiff's argument that services provided outside the classroom are not appropriate for H.P.  The February 2018 HOD stated that "[a]lthough Petitioner's mother/educational advocate requested at the IEP meeting that related services be provided inside the classroom, there is no indication that position was supported by any other members of the team."  A.R. 23.  Plaintiff's chief complaint with the July 2018 IEP, with respect to both speech-language and behavior support, is that it required H.P. to be pulled out of the classroom for the services.  *See* Pl.'s Mem. at 23–30.  Plaintiff points to evidence in the record that suggests that the out-of-class services were not necessary for H.P. *See id.* at 33–34.  Hearing Officer Ruff did not adequately consider this evidence or Plaintiff's argument that the speech-language and behavior support services outside the classroom would actually undermine H.P.'s progress.

Hearing Officer Ruff also failed to adequately consider Plaintiff's arguments that the data underlying the prescribed occupational therapy services was incomplete.  Hearing Officer Ruff found that the DCPS occupational therapist conducted an assessment and observation of H.P. and concluded that "there was no change needed in [H.P.'s] treatment and goals."  A.R. 12. Hearing Officer Ruff credited the testimony of the occupational therapist and concluded that the occupational therapy "services prescribed in the IEP were appropriate to address Student's needs."  A.R. 24.  Plaintiff had argued, however, that the DCPS occupational therapist did not

test HP's balance and gross motor skills and that H.P. continued to have significant deficits in these areas that required revised goals and support.  *See* Pl.'s Mem. at 32; *see also* A.R. 1314 (Plaintiff's closing argument before Hearing Officer Ruff arguing the same).  Plaintiff contends that the extra occupational therapy that H.P. received at the Auburn school addressed these areas of concern and benefitted H.P.  *See* Pl.'s Mem. at 32.  Hearing Officer Ruff did not address this argument or Plaintiff's challenge to the data underlying the occupational therapy services.

Remand is appropriate because the IDEA does not constitute "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."  *Rowley*, 458 U.S. at 206.  Hearing Officer Ruff should have the opportunity to render a decision, based on the whole record, in light of DCPS's burden to show that the July 2018 IEP was appropriate for H.P.  Hearing Officer Ruff should also have an opportunity to address Plaintiff's arguments with respect to H.P.'s difficulties with transitions and the problems with services outside the classroom in the first instance.  The errors identified by the Court suggest that "a remand for further consideration of the evidence, and for further findings of fact and conclusions of law, is the only vehicle by which review consistent with the applicable statutory scheme can be accomplished."  *M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 41 (D.D.C. 2013) (quoting *Howe*, 512 F. Supp. 2d at 57–58); *see also McNeil*, 217 F. Supp. 3d at 115–16 (remanding to hearing officer where HOD failed "to address . . . material testimony in evaluating the sufficiency of the 2012 IEP").  Hearing Officer Ruff has the benefit of having heard the relevant testimony first hand—the Court therefore remands this matter to the hearing officer to address the appropriateness of the July 2018 IEP in light of the entire record and the applicable burden of persuasion.

### C.  Appropriateness of Educational Placement

The February 2018 HOD stated that the proposed educational placement, at a school called Children's Guild, "can implement Student's July 13, 2018, IEP and can otherwise provide Student a FAPE."  A.R. 27.  The IDEA requires that DCPS "must place the student in a setting capable of fulfilling the student's IEP."  *Johnson v. District of Columbia*, 962 F. Supp. 2d 263, 267 (D.D.C. 2013).  Consequently, an appropriate educational placement must flow from an appropriate IEP.  *See* 34 C.F.R. § 300.116(b) (stating that "[t]he child's placement . . . [i]s based on the child's IEP").  Because the Court remands this matter to the hearing officer for further consideration of the appropriateness of the July 2018 IEP, the hearing officer should reconsider, if necessary, his ruling on the appropriateness of the proposed placement after reconsidering the July 2018 IEP.  The Court declines to address the appropriateness of the proposed placement at this point because it rules that the substance of the July 2018 IEP requires further consideration.

### V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED** and Defendant's cross motion for summary judgment (ECF No. 16) is **DENIED**.  This case is **REMANDED** for further proceedings consistent with this Opinion and for a determination of the appropriate relief.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 14, 2020                                          RUDOLPH CONTRERAS
                                                                                    United States District Judge